SCOTT v. UNION GUARDIAN TRUST CO.

SAME v. SECURITY TRUST CO.

Trusts—Accounting—Equity—Right to Trust Fund.

Where owners of land, desiring to erect apartment building, executed trust mortgage to secure bond issue under agreement that proceeds were to be paid by trustee to mortgagors as construction progressed, but before building was completed mortgagors conveyed all of their interest in property and

balance of trust fund to corporation which completed build-
ing, right, if any, to accounting and recovery of money alleged
to have been wrongfully paid by trustee to one of mortgagors
and converted to his own use belonged to corporation and not
to other mortgagor, who had disposed of his interest therein.

Appeal from Wayne; Boomhower (Xenophon
A.), J., presiding. Submitted June 21, 1932. (Docket
Nos. 68, 69, Calendar Nos. 36,259, 36,260.)   Decided
September 16. 1932.   Rehearing denied January 25,
1933.

Separate bills for accounting by Barzillai A. Scott
and another against Union Guardian Trust Com-
pany and others and Security Trust Company and
others.   Cases consolidated for trial.   Bills dis-
missed.   Plaintiffs appeal.   Affirmed.

*Wm. Henry Gallagher,* for plaintiffs.

*Bulkley, Ledyard, Dickinson & Wright (Harold
R. Smith, George Haggarty,* and *T. Donald Wade,*
of counsel), for defendant Union Guardian Trust Co.

*Stevenson, Butzel, Eaman & Long (Leo W. Kuhn,*
of counsel), for defendant Security Trust Co.

McDonald, J.   The plaintiff, Barzillai A. Scott,
began separate suits for an accounting against the
Union Guardian Trust Company and the Security
Trust Company of Detroit.   The causes were con-
solidated in the circuit court and are here heard to-
gether on appeal.   They will be disposed of in one
opinion.

Barzillai A. Scott and Benjamin Braver owned
vacant property in the city of Detroit on which they
desired to erect the Strathmore apartments.   To ob-
tain money for that purpose they executed a trust
mortgage to the Union Guardian Trust Company,
as trustee, to secure a bond issue of $475,000.   At

the same time they entered into an agreement with the trustee and Brasie, Hull & Company, bankers, for the sale of the bonds and the retention by the trustee in escrow of the proceeds to insure the payment of work and materials in the construction of the building. It was provided in this agreement that the proceeds should be paid to the mortgagors during the progress of construction only on the receipt of the architect's certificate showing the amount due contractors for labor and materials, and that the balance on hand was sufficient to complete the building; also sworn statements by the contractors in compliance with the lien law and an agreement by them to release liens upon the payment of the balance on their contracts. It was also provided that if the proceeds from the sale of bonds should become insufficient to complete the building, the mortgagors should furnish other funds for that purpose; and that any unused balance should be paid to them.

While this work was in progress, Scott and Braver decided to erect a similar building on an adjoining lot to be known as the Monmoor Hotel. For that purpose they executed a trust mortgage to the Security Trust Company of Detroit to secure a bond issue of $289,000. An agreement substantially like that made in the preceding transaction with the Union Guardian Trust Company for the sale of the bonds and the application of the proceeds was made with the Security Trust Company and Brasie, Hull & Company.

It is the claim of Mr. Scott in both cases that the trust companies, disregarding the condition of the agreement relative to the payment of the proceeds from the sale of the bonds, wrongfully paid to Braver many thousands of dollars which he did not apply in payment of the costs of construction but which he appropriated to his own use; that as a re-

sult liens totaling $263,359.86 were filed against the property, and there was not sufficient money remaining in the hands of the trustees to complete the buildings. Faced with these conditions, the mortgagors were compelled to refinance their building operations. This was done by forming a new corporation known as the Strathmore Hotel Company and issuing subordinate bonds to the contractors and other creditors. To this corporation they conveyed the fee title to the property and assigned to it balances on hand in the two trust companies totaling $132,000. The corporation completed the buildings.

Mr. Scott was the principal stockholder in the Scott Tie Company. He borrowed heavily from the company, and, subsequently, to secure this indebtedness, assigned and transferred to it all of his assets, including his claims in these suits against the defendants. The transfer was made after the commencement of the suits, and on application the court permitted the Scott Tie Company to be substituted as the party plaintiff.

The issue in the cases under consideration involves the claim asserted by Mr. Scott that he is entitled to an accounting by the defendant trust companies for the money wrongfully paid by them to Braver which did not go into the construction cost of the buildings. The trial court held that individually Mr. Scott had no interest in that money, and accordingly entered a decree dismissing his bill. The plaintiff has appealed.

The plaintiff makes no claim to the balance of the trust receipts in the hands of the trustees at the time Scott and Braver deeded the property to the Strathmore Hotel Company. The sole claim as stated in its brief is:

"That the companies were guilty of a breach of trust, rendering them liable to Scott to the extent

that the funds paid to Braver were appropriated by him and did not go into the building.''

The difficulty confronting Mr. Scott in seeking to establish his right to the money paid to Braver is the conveyance of all of his interest in the property to the Strathmore Hotel Company before the buildings were completed. The money never belonged to Scott and Braver, but they were under obligation to construct the buildings and had the right to use it for that purpose. This right passed with the conveyance and the assumption by the Strathmore Hotel Company of the obligation to complete the buildings. The money was furnished by the bondholders and it belonged to them until it went into the construction. The bonds were sold under an agreement that the proceeds were to be held by the trustees and paid out as the work progressed. When the Strathmore Hotel Company took over the incompleted building operations, it became entitled to all of the unexpended proceeds from the sale of the bonds to be paid out according to the agreement which Scott and Braver had with the trustees. Scott and Braver had nothing more to do with the project. If the defendant trustees wrongfully paid Braver thousands of dollars which did not go into the construction and Scott had put in money to make good the deficit, a different situation would be presented. But he did not do that. Instead, he disconnected himself with the enterprise by conveying all of his interest to the Strathmore Hotel Company. If any one is entitled to an accounting it is that company.

The trial court correctly decided that as Scott had no interest he could not maintain the action.

The decree in both cases is affirmed, with costs.

CLARK, C. J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.